MRM:AXB
F. #2020R00902

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

- against -

RAMI SAAB,
    also known as "Rami Hasan," and
████████████████████████████

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

S U P E R S E D I N G
I N D I C T M E N T

Cr. No. 22-344 (S-1) (GRB) (JMW)
(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1),
982(b)(1), 1014, 1040(a)(2), 1040(b)(1),
1343, 1349, 1956(h), 2 and 3551 et seq.;
T. 21, U.S.C., § 853(p); T. 28, U.S.C.,
§ 2461(c))

THE GRAND JURY CHARGES:

### INTRODUCTION

At all times relevant to this Superseding Indictment, unless otherwise indicated:

<u>The COVID-19 Pandemic in the United States</u>

1.    In or about December 2019, a novel coronavirus, SARS-CoV-2 (the "coronavirus") caused outbreaks of the coronavirus disease COVID-19 that spread globally. On or about January 31, 2020, the Secretary of Health and Human Services declared a national public health emergency under 42 U.S.C. § 247d as a result of the spread of COVID-19 to and within the United States. On or about March 11, 2020, the Director-General of the World Health Organization characterized COVID-19 as a pandemic. On or about March 13, 2020, the President of the United States issued Proclamation 9994 declaring a national emergency beginning on March 1, 2020, as a result of the rapid spread of COVID-19 within the United States.

The Paycheck Protection Program

2. On or about March 27, 2020, the President signed into law the Coronavirus Aid, Relief, and Economic Security ("CARES") Act. The CARES Act was a federal law designed to provide emergency financial assistance to the millions of Americans who were suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the Paycheck Protection Program ("PPP"). In or around April 2020, Congress authorized over $300 billion in additional PPP funding.

3. To obtain a PPP loan, qualifying businesses were required to submit a PPP loan application, which was signed by an authorized representative of the business. The PPP loan application required recipient businesses, through an authorized representative, to acknowledge the program rules and make certain affirmative certifications to establish eligibility for the PPP loan. For example, in the PPP loan application, recipient businesses, through an authorized representative, were required to state, among other things, their average monthly payroll expenses and number of employees. These figures were used to calculate the amount of money the businesses were eligible to receive under the PPP. The recipient businesses were also required to provide documentation supporting the information contained in the PPP loan application.

4. PPP loan proceeds were required to be used by the recipient businesses on certain permissible expenses, to wit: payroll costs, interest on mortgages, rent and utilities. The PPP allowed the interest and principal on a PPP loan to be entirely forgiven if the recipient

businesses spent the loan proceeds on these expense items within a designated period of time after receiving the proceeds and used a certain percentage for payroll costs.

       5.       The PPP was overseen by the Small Business Administration ("SBA"), which had authority over all PPP loans. Individual PPP loans, however, were issued and approved by private lenders, which received and processed PPP loan applications and supporting documentation and, following SBA approval, made loans using the lenders' own funds.

<u>The Economic Injury Disaster Loan Program</u>

       6.       The Economic Injury Disaster Loan program ("EIDL") was an SBA program that provided low-interest financing to small businesses, renters and homeowners in regions affected by declared disasters. The CARES Act authorized the SBA to provide EIDLs of up to $2,000,000 to eligible small businesses experiencing substantial financial disruption due to the COVID-19 pandemic.

       7.       To obtain an EIDL, a qualifying business was required to submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. Sole proprietors were eligible for EIDLs so long as they had verifiable business income during the 12-month period preceding the disaster.

       8.       In the case of EIDLs for COVID-19 relief, the 12-month period was the period preceding January 31, 2020. The applicant was also required to certify that all the information in the application was true and correct to the best of the applicant's knowledge.

       9.       EIDL applications were submitted directly to the SBA and processed by the SBA, in some instances with support from a government contractor, Rapid Finance. The amount of the loan, if the application was approved, was determined based, in part, on the

information provided in the application about employment, revenue and cost of goods, as described above. Any funds issued under an EIDL were issued directly by the SBA. EIDL funds could be used for payroll expenses, sick leave, production costs and business obligations, such as debts, rent and mortgage.

The Defendants and Their Fraud Scheme

    10.  The defendant RAMI SAAB, also known as "Rami Hasan," was a resident of Glen Cove, New York. ███████████████████████████████████ ███████████████████████████████ SAAB and ███ were associated with numerous corporate entities (the "Subject Entities"), through which they committed the fraud described herein.

    11.  On or about and between May 1, 2020 and the date of this Superseding Indictment, both dates being approximate and inclusive, the defendants RAMI SAAB and ███████████ engaged in a scheme to defraud the SBA and several financial institutions administering the PPP program of federal COVID-19 emergency relief funds meant for distressed small businesses. It was a part of the scheme to defraud that SAAB and ███, together with others, submitted or caused to be submitted at least twenty online loan applications to obtain funds through the PPP and EIDL programs for the Subject Entities. It was further a part of the scheme to defraud that these loan applications and certain supporting documentation contained materially false and fraudulent information, including, but not limited to, the Subject Entities' number of employees, payroll costs and intended use of the loan proceeds, all of which was specifically designed to mislead the SBA and financial institutions administering the PPP and EIDL programs into disbursing various loans, which they did.

12.   In total, on or about and between May 1, 2020 and the date of this Superseding Indictment, both dates being approximate and inclusive, as a result of this fraudulent scheme, the SBA and financial institutions administering the PPP and EIDL programs wire-transferred sums totaling approximately $9,668,508 in PPP and EIDL loans for the Subject Entities to bank accounts as to which the defendants RAMI SAAB and ▓▓▓▓▓▓▓ had access and control at bank branches in the Eastern District of New York and elsewhere.

13.   Shortly after receiving these loan proceeds, the defendants RAMI SAAB and ▓▓▓▓▓▓▓, together with others, engaged in numerous financial transactions designed to conceal the true nature and source of the funds, including electronically transferring certain of the loan proceeds between various bank accounts as to which SAAB and ▓▓ had access and control.  SAAB and ▓▓ then utilized the laundered loan proceeds to enrich themselves and others, including by personally making cash withdrawals and transferring funds to associates overseas.

COUNT ONE
(Disaster Relief Fraud)

14.   The allegations contained in paragraphs one through thirteen are realleged and incorporated as if fully set forth in this paragraph.

15.   On or about and between May 1, 2020 and the date of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RAMI SAAB, also known as "Rami Hasan," and ▓▓▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ together with others, did knowingly and intentionally make one or more materially false, fictitious, and fraudulent statements and representations, and make and use one or more false writings and documents knowing the same to contain materially false, fictitious, and fraudulent statements and representations, in

connection with a procurement of property and services related to an emergency declaration under Section 501 of the Stafford Act, to wit: Proclamation 9994 of March 13, 2020 by the President of the United States of America Declaring a National Emergency Concerning a Novel Coronavirus Disease (COVID-19) Outbreak, which benefits were authorized, transported, transmitted, transferred, disbursed and paid in and affecting interstate and foreign commerce.

(Title 18, United States Code, Sections 1040(a)(2), 1040(b)(1), 2 and 3551 et seq.)

## COUNT TWO
(False Statements to the Small Business Administration)

16. The allegations contained in paragraphs one through thirteen are realleged and incorporated as if fully set forth in this paragraph.

17. On or about and between May 1, 2020 and the date of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RAMI SAAB, also known as "Rami Hasan," and ▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬▬ together with others, did knowingly make one or more false statements and reports for the purpose of influencing the action of the SBA in connection with an application, advance, discount, purchase, purchase agreement, repurchase agreement, commitment, loan and insurance agreement and application for insurance and a guarantee, and any change and extension of any of the same, by renewal, deferment of action or otherwise, and the acceptance, release and substitution of security therefor, to wit: SAAB and ▬▬ provided false information in fraudulent PPP and EIDL loan applications to induce the SBA to approve loans to the Subject Entities.

(Title 18, United States Code, Sections 1014, 2 and 3551 et seq.)

COUNT THREE
(Conspiracy to Commit Wire Fraud)

18. The allegations contained in paragraphs one through thirteen are realleged and incorporated as if fully set forth in this paragraph.

19. On or about and between May 1, 2020 and the date of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RAMI SAAB, also known as "Rami Hasan," and ▓▓▓▓▓ ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ together with others, did knowingly and intentionally conspire to devise a scheme and artifice to defraud the SBA and several financial institutions administering the PPP and EIDL programs of federal COVID-19 emergency relief funds meant for distressed small businesses, and to obtain money and property from the SBA and the financial institutions, by means of materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, writings, signs, signals, pictures and sounds, contrary to Title 18, United States Code, Section 1343.

(Title 18, United States Code, Sections 1349 and 3551 et seq.)

COUNTS FOUR THROUGH TWENTY-FOUR
(Wire Fraud)

20. The allegations contained in paragraphs one through thirteen are realleged and incorporated as if fully set forth in this paragraph.

21. On or about the dates set forth below, within the Eastern District of New York and elsewhere, the defendants RAMI SAAB, also known as "Rami Hasan," and ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ together with others, did knowingly and intentionally devise a scheme and artifice to defraud the SBA and several

financial institutions administering the PPP and EIDL programs, and to obtain money and property from the SBA and the financial institutions, by means of one or more materially false and fraudulent pretenses, representations and promises, and for the purpose of executing such scheme and artifice did transmit and cause to be transmitted, by means of wire communication in interstate commerce, one or more writings, signs, signals, pictures and sounds, as set forth below:

| Count | Approximate Date of Wire Transmission | Description of Wire Transmission |
|---|---|---|
| FOUR | May 30, 2020 | Electronic submission of EIDL loan application to the SBA |
| FIVE | June 2, 2020 | Electronic submission of EIDL loan application to the SBA |
| SIX | June 13, 2020 | Electronic submission of PPP loan application to Bank of America |
| SEVEN | June 17, 2020 | Electronic submission of PPP loan application to Citibank |
| EIGHT | June 18, 2020 | Electronic submission of EIDL loan application to the SBA |
| NINE | June 20, 2020 | Electronic submission of EIDL loan application to the SBA |
| TEN | June 22, 2020 | Electronic submission of PPP loan application to Kabbage, Inc. |
| ELEVEN | June 22, 2020 | Electronic submission of PPP loan application to Cross River Bank |
| TWELVE | June 24, 2020 | Electronic submission of PPP loan application to Kabbage, Inc. |
| THIRTEEN | June 27, 2020 | Electronic submission of PPP loan application to Kabbage, Inc. |

| FOURTEEN | June 28, 2020 | Electronic submission of PPP loan application to Kabbage, Inc. |
|---|---|---|
| FIFTEEN | June 29, 2020 | Electronic submission of PPP loan application to Kabbage, Inc. |
| SIXTEEN | June 29, 2020 | Electronic submission of PPP loan application to Cross River Bank |
| SEVENTEEN | July 18, 2020 | Electronic submission of PPP loan application to Chase Bank |
| EIGHTEEN | July 27, 2020 | Electronic submission of PPP loan application to Citibank |
| NINETEEN | July 30, 2020 | Electronic submission of PPP loan application to Citibank |
| TWENTY | February 3, 2021 | Electronic submission of PPP loan application to Cross River Bank |
| TWENTY-ONE | March 18, 2021 | Electronic submission of PPP loan application to Chase Bank |
| TWENTY-TWO | March 30, 2021 | Electronic submission of PPP loan application to Customers Bank |
| TWENTY-THREE | May 7, 2021 | Electronic submission of PPP loan application to Blue Ridge Bank |
| TWENTY-FOUR | May 24, 2021 | Electronic submission of PPP loan application to Blue Ridge Bank |

(Title 18, United States Code, Sections 1343, 2 and 3551 et seq.)

COUNT TWENTY-FIVE
(Conspiracy to Commit Money Laundering)

22.     The allegations contained in paragraphs one through thirteen are realleged and incorporated as if fully set forth in this paragraph.

23.     On or about and between May 1, 2020 and the date of this Superseding Indictment, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendants RAMI SAAB, also known as "Rami Hasan," and ▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ together with others, did knowingly and intentionally conspire to conduct one or more financial transactions in and affecting interstate

and foreign commerce, including deposits, transfers and withdrawals of funds and monetary instruments, which in fact involved the proceeds of specified unlawful activity, to wit: wire fraud, in violation of Title 18, United States Code, Section 1343, knowing that the property involved in the financial transactions represented the proceeds of some form of unlawful activity, and knowing that the transactions were designed in whole and in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of specified unlawful activity, and to avoid one or more transaction reporting requirements under State and Federal law, contrary to Title 18, United States Code, Sections 1956(a)(1)(B)(i) and 1956(a)(1)(B)(ii).

(Title 18, United States Code, Sections 1956(h) and 3551 et seq.)

## CRIMINAL FORFEITURE ALLEGATION
## AS TO COUNTS TWO THROUGH TWENTY-FOUR

24. The United States hereby gives notice to the defendants that, upon their conviction of any of the offenses charged in Count Two through Count Twenty-Four, the government will seek forfeiture in accordance with Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), which require any person convicted of such offenses to forfeit any property, real or personal, constituting, or derived from, proceeds obtained directly or indirectly as a result of such offenses.

25. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;

    (b)    has been transferred or sold to, or deposited with, a third party;

    (c)    has been placed beyond the jurisdiction of the court;

    (d)    has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), to seek forfeiture of any other property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Section 981(a)(1)(C); Title 21, United States Code, Section 853(p); Title 28, United States Code, Section 2461(c))

## CRIMINAL FORFEITURE ALLEGATION AS TO COUNT TWENTY-FIVE

26. The United States hereby gives notice to the defendants that, upon their conviction of the offense charged in Count Twenty-Five, the government will seek forfeiture in accordance with Title 18, United States Code, Section 982(a)(1), which requires any person convicted of such offense to forfeit any property, real or personal, involved in such offense, or any property traceable to such property.

27. If any of the above-described forfeitable property, as a result of any act or omission of the defendants:

(a) cannot be located upon the exercise of due diligence;

(b) has been transferred or sold to, or deposited with, a third party;

(c) has been placed beyond the jurisdiction of the court;

(d) has been substantially diminished in value; or

(e) has been commingled with other property which cannot be divided without difficulty;

it is the intent of the United States, pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 18, United States Code, Section 982(b)(1), to seek forfeiture of any other

property of the defendants up to the value of the forfeitable property described in this forfeiture allegation.

(Title 18, United States Code, Sections 982(a)(1) and 982(b)(1); Title 21, United States Code, Section 853(p))

A TRUE BILL

———————————————
FOREPERSON

*By Carolyn Pokorny, Assistant U.S. Attorney*
———————————————
BREON PEACE
UNITED STATES ATTORNEY
EASTERN DISTRICT OF NEW YORK

F.#: 2020R00902

FORM DBD-34
JUN 85

No. _____

# UNITED STATES DISTRICT COURT

EASTERN *District of* NEW YORK

CRIMINAL DIVISION

THE UNITED STATES OF AMERICA

*vs.*

RAMI SAAB, *also known as* "*Rami Hasan,*" and

███████████████████████████████████████

Defendants.

# SUPERSEDING INDICTMENT

(T. 18, U.S.C., §§ 981(a)(1)(C), 982(a)(1), 982(b)(1), 1014, 1040(a)(2), 1040(b)(1), 1343, 1349, 1956(h), 2 and 3551 et seq.; T. 21, U.S.C., § 853(p); T. 28, U.S.C., § 2461(c))

*A true bill.*

_____
*Foreperson*

*Filed in open court this* _____ *day,*

*of* _____ A.D. 20 _____

_____
*Clerk*

*Bail, $* _____

_____

***Michael R. Maffei / Anthony Bagnuola, Assistant U.S. Attorneys (631) 715-7890/7849***